RENDERED: AUGUST 1, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0533-MR

LEXINGTON COAL COMPANY, LLC                                    APPELLANT

v.

APPEAL FROM PIKE CIRCUIT COURT
HONORABLE EDDY COLEMAN, JUDGE
ACTION NO. 22-CI-00211

COMMONWEALTH OF KENTUCKY,
ENERGY AND ENVIRONMENT
CABINET AND REBECCA W.
GOODMAN, SECRETARY, ENERGY
AND ENVIRONMENT CABINET                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND A. JONES, JUDGES.

CALDWELL, JUDGE: Lexington Coal Company, LLC ("LCC") appeals from a grant of summary judgment affirming an administrative action. We affirm.

# FACTS

In early 2019, Ramona Dibble ("Dibble") contacted the abandoned mine lands division of the Energy and Environment Cabinet ("the Cabinet") to report a landslide on her property. The Cabinet investigated.

In September 2019, the Cabinet issued a notice of non-compliance to LCC on its permit to conduct coal mining operations in Kentucky. The Cabinet alleged that LCC had violated Kentucky regulations about general hydrologic requirements and water quality. *See* 405 KAR[1] 18:060; 405 KAR 18:070. Specifically, the Cabinet alleged that LCC's underground mining activities had damaged the hydrologic balance in the area through uncontrolled seeps from the Williamson Coal Seam and bypassing sediment control. LCC was also ordered to take remediation measures within 30 days.[2]

LCC filed a petition for administrative review of the notice of non-compliance. In 2021, a formal administrative hearing occurred, and the hearing officer filed his Report and Recommended Secretary's Order. The report noted the witnesses testifying for the Cabinet included Daniel Skillman ("Skillman"), a

---

[1] Kentucky Administrative Regulations.

[2] In September 2020, the Cabinet issued an Order for Cessation and Immediate Compliance alleging LCC had failed to take the required remediation steps. It further ordered that LCC must cease coal removal until all cessation orders are abated. However, LCC did not seek administrative review of the 2020 cessation order.

-2-

Cabinet Environmental Scientist IV. Likewise, the report noted LCC presented the testimony of its Vice-President of Aquatic Resource Management, Nick Baker ("Baker"), and its Director of Environmental Services, Brad Branham ("Branham"). The report also reflected the introduction of exhibits including the *curriculum vitae* ("CV") of Skillman, reports filed by Skillman and Baker, and an "expert response" by Donald K. Lumm to a 2019 report by Skillman about Dibble's property. (Record on Appeal, ("R."), p. 16.)[3]

The hearing officer's report included findings about the Cabinet's investigation of Dibble's report and how Skillman conducted a site visit, performed field tests on water (including chemical analysis), and observed other landslides nearby. The report also discussed how witnesses—including Skillman, Baker and Branham—noted that "adits" (digs by individuals to obtain coal for household use) were also present near the Dibble property. It also noted evidence

---

[3] Unfortunately, some items are filed out of order in the circuit court's bound written record. Pages 1-36 are followed by pages 66-106, followed by pages 37-65, followed by pages 107-146 in the bound volume. As a result, the answer appears toward the back of the bound volume after some items filed months later. Likewise, the middle of a document (starting with paragraph 39) begins on page 66, which is placed directly after the end of the complaint on page 36. However, the beginning of this same document appears toward the back of the bound volume.

While we appreciate the efforts of the personnel who compile the written records and understand that everyone makes mistakes, we urge the circuit clerk's office to take greater care to make sure that items in the record are included in the proper order in the future. *See* Rules of Appellate Procedure ("RAP") 26(B)(1) ("All parts of the written record on appeal shall be arranged in the order in which they were filed or entered[.]").

of seeps near a gas well road located above the landslide on the Dibble property and of other coal seams near the Dibble home.

Ultimately, the hearing officer concluded that LCC's underground mining was the cause of the landslide on the Dibble property—rather than other factors such as the gas well road, other coal seams or mines, or the adits. The hearing officer's report relied primarily on Skillman's reports and testimony.

In February 2022, the Cabinet's Secretary issued a brief order noting she had reviewed the hearing officer's report and recommendations and the parties' responses and exceptions thereto. The Secretary adopted the hearing officer's report and recommendations, affirming the non-compliance notice and order for remedial measures and denying LCC's claims.

LCC filed an action in Pike Circuit Court seeking review of the Secretary's order in March 2022. The Cabinet filed an answer a few weeks later. In May 2023, the circuit court entered a notice to dismiss for lack of prosecution, which instructed the parties to show cause at a hearing to be held that June 23rd why the action should not be dismissed since no pretrial steps had been taken in the last year. In early July 2023, the circuit court entered an order dismissing the case without prejudice because no pretrial step had been taken within the past year.

Later that month, LCC filed a motion to retain the case on the court's active docket. The Cabinet filed a response in objection. Following a hearing, the circuit court granted LCC's motion to retain the case on its active docket.

In October 2023, the Cabinet filed a motion for summary judgment with a supporting memorandum arguing there were no material issues of fact and that it was entitled to judgment as a matter of law. The Cabinet asserted the action was an appeal of an administrative agency decision which was supported by substantial evidence and thus must be affirmed.

LCC filed a response to the motion for summary judgment. It argued the Secretary's order was not supported by substantial evidence and must be set aside. Specifically, it contended that the hearing officer's report (adopted by the Secretary) improperly relied only on Skillman's opinion and failed to consider evidence presented by LCC. LCC further alleged the seep from the Williamson coal seam did not flow into the landslide area on Dibble's property and would not have caused the landslide to occur. Pointing to Baker's testimony, it argued the seep from the Williamson coal seam could not have possibly caused the landslide on the Dibble property.

According to LCC, Skillman testified to not considering the implications of adits above the Dibble property and failed to investigate or consider other possible causes of the landslide such as wildcat mining, a junk yard

bench, a secondary road without drainage ditches or sediment control, improperly

placed gas road pipes, contamination from gas well drilling, and increased rainfall.

LCC also claimed Skillman failed to test for or analyze other factors which could

have increased the presence of sulfates or conductivity in the water.

In sum, LCC argued other reasons were just as likely the cause of the

landslide on the Dibble property as its mining operations, but Skillman failed to

properly consider these factors. LCC asserted it had presented sufficient evidence

to show the landslide was not caused by its mining operations. Thus, it requested

an order denying the Cabinet's motion for summary judgment.

Following a hearing held in December 2023,[4] the circuit court took

the matter under advisement. In April 2024, the circuit court entered an order

granting the Cabinet's motion for summary judgment and dismissing LCC's

---

[4] No CD or DVD of the hearing on the motion for summary judgment was included in the record on appeal. *See* RAP 24(A)(3). This is clearly reflected in the clerk's certification of the record, which states there are no CD/DVD recordings, and which was sent to the parties' counsel of record. Moreover, LCC evidently did not file "a designation listing with specificity the dates on which official recordings were made for all pre-trial and post-trial proceedings necessary for inclusion in the record on appeal." RAP 24(B)(1)(a).

After the certification of the record was filed, LCC filed a motion to supplement the record to include the administrative record. However, LCC did not request that a recording of the hearing on the summary judgment motion also be included in the record and neither party refers to any portion of a recording on the summary judgment motion hearing in appellate briefs. In short, the parties' attorneys are presumably aware that no CD or DVD of the summary judgment motion hearing before the circuit court was provided to us. Under these circumstances, we have declined to take steps to obtain the hearing recording and obviously we have not viewed a recording of this hearing.

action. The circuit court stated it was not allowed to review the Cabinet's decision *de novo* (without deference), but it must simply review the record to determine if the Cabinet's findings were supported by substantial evidence.

The circuit court recognized that LCC criticized Skillman's opinions and described the testimony of LCC's witnesses "differently" (page 1 of order on appeal)—perhaps meaning other than as described in the memorandum supporting the motion for summary judgment or in the hearing officer's report. The court also noted that the hearing officer stated he found the Cabinet's expert witness (Skillman) credible, but the hearing officer also discussed evidence presented by LCC's witnesses. The court specifically cited to a few portions of the hearing report mentioning LCC's witnesses' testimony or reports. Moreover, the court determined the Cabinet's findings were supported by substantial evidence.

LCC filed a timely appeal. On appeal, LCC again argues the Cabinet's findings are not supported by substantial evidence. It claims Baker's and Branham's opinions show the cause of the landslide on the Dibble property was not LCC's mining operations. LCC further suggests the Cabinet erred in relying on Skillman's opinion in part because Skillman is a geologist, rather than a hydrologist. LCC also asserts the hearing officer's report shows the hearing officer failed to consider many factors discussed by LCC's witnesses. It claims the hearing officer's report refers to Skillman's opinions in about ninety-five percent

(95%) of recommended findings and refers to Baker's and Branham's reports and/or testimony just a few times.

In contrast, the Cabinet points out the hearing officer's report discusses LCC's witnesses' testimony. The Cabinet also asserts that administrative officers are not obligated to provide unduly detailed factual findings or analysis. And it asserts its findings are supported by substantial evidence.

In its reply brief, LCC again emphasizes Skillman is a geologist, not a hydrologist. It also argues the Cabinet placed too much emphasis on water samples and did not focus enough on contradictions in Skillman's analysis. It urges us to set aside the summary judgment in the Cabinet's favor.

## ANALYSIS

### Standard of Review

Since LCC appeals from the grant of summary judgment, we must consider whether the circuit court correctly determined there were no genuine issues of material fact and that the moving party (the Cabinet) was entitled to judgment as a matter of law. *See, e.g.*, *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370 (Ky. 2010).

The circuit court properly made no factual findings of its own, and we review its application of the law *de novo*. *Id*. at 370–71 ("An appellate court need not defer to the trial court's decision on summary judgment and will review the

issue de novo because only legal questions and no factual findings are involved."). We keep in mind that the circuit court was essentially faced with reviewing an administrative agency decision and must consider whether it applied the appropriate legal standard for doing so.

Judicial review of administrative agency decisions requires determining if the agency's factual findings are supported by substantial evidence and if the agency has applied the correct rule of law to its factual findings. *See, e.g.*, *Southern Bell Tel. & Tel. Co. v. Kentucky Unemployment Ins. Commission*, 437 S.W.2d 775, 778 (Ky. 1969); *500 Associates, Inc. v. Nat. Resources and Environmental Protection Cabinet*, 204 S.W.3d 121, 131 (Ky. App. 2006).

LCC has not asserted that the Cabinet applied an incorrect rule of law or acted outside the scope of its authority. Instead, LCC has simply and consistently argued that the Cabinet's findings and decision are not supported by substantial evidence.

Substantial evidence "has sufficient probative value to induce conviction in the minds of reasonable" people. *Id.* Moreover,

> the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. As long as there is substantial evidence in the record to support the agency's decision, the court must defer to the agency, even if there is conflicting evidence.

*Id.* at 131-32 (internal quotation marks and footnotes omitted).

With these principles in mind, we consider LCC's arguments.

LCC argues the administrative decision is not supported by substantial evidence and that an overwhelming amount of evidence at the administrative hearing can only support a finding that LCC did not violate regulatory standards. It states these arguments were preserved for appeal by its response to the summary judgment motion and at oral argument before the circuit court. It cites to specific pages of the written record where its response to the summary judgment motion appears. *See* RAP 32(A)(4); RAP 31(E)(3). However, LCC fails to cite to any specific portion of a recording of the summary judgment hearing before the circuit court. *See* RAP 32(A)(4); RAP 31(E)(4). Moreover, the record on appeal does not contain a recording of the circuit court hearing on the summary judgment motion.

The appellant has the responsibility of making sure that the appellate court receives the complete record. *Gambrel v. Gambrel*, 501 S.W.3d 900, 902 (Ky. App. 2016). Moreover, we may assume that items omitted from the record support the lower court's decision. *Id.*

Thus, without a recording of the circuit court hearing, we may presume that issues not raised in LCC's written response to the Cabinet's summary judgment motion were not raised to the circuit court and thus were not properly preserved for appeal. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021)

-10-

("If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved.").

**Any Issue About Whether Skillman Was Qualified to Offer Opinions Was Not Preserved for Appeal and Any Error in this Respect Is Not Palpable**

In both its initial appellant brief and in its reply brief, LCC emphasizes that Skillman is a geologist rather than a hydrologist to suggest that the Cabinet should have relied on the opinions of LCC's witnesses instead.[5] However, to the extent that it claims Skillman lacked the requisite qualifications, LCC has not directed our attention to any portion of the record wherein it raised any challenge to Skillman's qualifications to offer opinions.

Moreover, LCC did not challenge Skillman's qualifications to offer opinions in its written response to the summary judgment motion. We also have not independently located any explicit challenge to Skillman's qualifications in anything LCC filed in the circuit court. (Nor have we independently come across any challenge to Skillman's qualifications in the administrative record, which was incorporated into the record on appeal from the circuit court.) In sum, it appears

---

[5] In addition to pointing out that Skillman is not a hydrologist, LCC describes its witness Branham as having "over 32 years of experience in mining and reclamation" and its witness Baker as "an expert in water quality analysis, water sampling, coal seams, and stability analysis[.]" (Appellant red brief, page 9.) Notably, LCC does not explicitly state that either Branham or Baker are hydrologists, nor does it direct our attention to any portion of the record indicating that any of its witnesses are hydrologists. Interestingly, Donald K. Lumm, who prepared an expert response to Skillman's report about the Dibble property for LCC, is also a geologist according to his CV.

-11-

that any issues about Skillman's qualifications to offer opinions were not raised to the circuit court and not preserved for our review. *See also Gasaway v. Commonwealth*, 671 S.W.3d 298, 311 (Ky. 2023) ("Because preservation determines the appropriate standard of review, an appellate court should determine for itself whether an issue is properly preserved. We are not bound by the view of the parties.").

Even generously reviewing any unpreserved issue about whether Skillman was qualified to offer opinions as a geologist rather than a hydrologist for palpable error despite the lack of request for palpable error review, we discern no palpable error resulting in manifest injustice. *See* CR[6] 61.02. Skillman's CV sets forth his training and work experience as a registered professional geologist with a bachelor's degree and additional graduate coursework in geology and continuing education about forensic hydrologic investigation. This alone suggests a lack of palpable error in the circuit court's not *sua sponte* determining that Skillman was so unqualified that his reports or testimony could not be considered substantial evidence to support the Cabinet's findings.

Moreover, Kentucky regulations in a slightly different context (regarding solid waste disposal and planning) recognize that professional geologists often have training or experience in hydrology or other water-related

---

[6] Kentucky Rules of Civil Procedure.

issues. *See* 401 KAR 47:005(130); 401 KAR 49:005(130) (Both defining a *qualified groundwater scientist* as: "a geologist registered in Kentucky who has received a baccalaureate or postgraduate degree in the natural sciences or engineering, and has sufficient training and experience in groundwater hydrology and related fields to enable that individual to make sound professional judgments regarding groundwater monitoring and contaminant fate and transport.").

In short, we discern no reason to disturb the circuit court's judgment upholding the Cabinet's decision based on any unpreserved issue about Skillman's qualifications. Next, we address LCC's other arguments for setting aside the summary judgment.

**Although LCC has Preserved Other Issues Concerning the Sufficiency of the Evidence for Review, the Circuit Court Properly Determined that the Cabinet's Findings Were Supported by Substantial Evidence**

Other than the unpreserved issue about Skillman's qualifications, LCC's allegations of error in its appellate briefs are consistent with the issues it raised to the Cabinet and circuit court. LCC argues in its brief:

> The trial court erred in granting the Cabinet's Motion for Summary Judgment because findings of fact made by Cobb [the hearing officer] are not supported by substantial evidence. This is not a case where there were a similar number of reasons to affirm or reject Skillman's opinion that the mining caused the seeps and resulting slides. To the contrary, there was one basis, water sample results, to affirm Skillman's opinion, while there were at least 25 contradictions in Skillman's analysis and other factors pointed out by LCC at the formal hearing

-13-

which would lead one to the conclusion that the mining did not cause the seeps and resulting slides.

While LCC acknowledges its significant burden to establish that Cobb's report and the Secretary's Order are not supported by substantial evidence, it believes that in this case, such a showing has been made. While Skillman, a geologist and not a hydrologist, made one visit to the site and took some water samples which showed the water had elevated sulfates, that one basis for his ultimate conclusions would not convict the minds of reasonable persons. Branham, who has over 32 years of experience in mining and reclamation pointed out numerous other factors that he visualized on multiple visits to the site that would explain the existence of the seeps and resulting slide. He noted several other non-mining disturbed areas from which water was flowing into the slide area which were not considered by Skillman. He also noted the existence of very old mine adits near the residence which would negatively impact slope stability and water quality in the area. Baker, an expert in water quality analysis, water sampling, coal seams and stability analysis, also contradicted the conclusions of Skillman by pointing out multiple examples where the water seeps within the slide area did not have the characteristics of discharge from the Williamson coal seam. Most telling was Baker's observation that the only seep with characteristics of the Williamson seam did not even flow into the slide area.

It is also pretty obvious from review of Cobb's report that he failed to even consider the numerous factors pointed out by LCC's witnesses that contradicted Skillman's opinions. In Cobb's recitation of the facts established at the hearing, which begins on page 6 of his report and ends at the top of page 19, Cobb referenced to [sic] Skillman's work on approximately 95% of the specific findings and referenced Branham and Baker only a few times. Cobb apparently did not review all of the

-14-

> evidence of record and as a result, his report is lacking
> and not supported by substantial evidence.

(Appellant red brief, pages 8-9.)[7]

LCC is certainly correct that the hearing officer's report discussed Skillman's opinions in much more detail than those offered by Branham and Baker. However, as the circuit court noted, the hearing officer's report did discuss (albeit briefly) the reports and/or testimony of Branham and Baker. Moreover, LCC cites no authority requiring that an administrative officer must discuss the testimony of every witness with the same degree of detail.

In some respects, perhaps one could understand LCC's frustration that its witnesses' criticisms of Skillman's reports and opinions were not discussed in detail in the hearing officer's report or the Secretary's order. However, an administrative officer is not necessarily required to issue detailed findings about every factual issue. Instead, the administrative officer must simply make the

---

[7] Although LCC cited to specific locations in the record in its statement of facts and in its preservation statement, LCC otherwise failed to cite to specific pages in the record (except for citations to a few pages of the hearing officer's report) in the argument section of his initial appellant brief. *See* RAP 32(A)(4). Appellate counsel for LCC previously submitted an appellant brief with deficiencies in *Bowie Refined Coal, LLC v. Energy and Enviroment* [sic] *Cabinet*, No. 2020-CA-0449-MR, 2021 WL 1583791, at *3 (Ky. App. Apr. 23, 2021) (unpublished).

We urge counsel to carefully review the Rules of Appellate Procedure and other resources including briefing checklists and the basic appellate handbook on our court website, https://www.kycourts.gov/Courts/Court-of-Appeals/Pages/default.aspx (last accessed Jul. 3, 2025).

factual basis of its decision clear. *See 500 Associates*, 204 S.W.3d at 132 ("When considering a claim, an administrative officer is not required to provide a detailed analysis of the facts and the law. However, he [or she] is required to set forth sufficient facts to support conclusions that are reached, so the parties understand the decision, and to permit a meaningful appellate review.").

Despite the lack of detailed discussion of LCC's witnesses' criticisms of Skillman's opinions, the hearing officer made the factual basis of his recommendations clear. He discussed in detail the Cabinet investigation and the reasoning behind Skillman's conclusions.

Moreover, although he did not explicitly discuss LCC's witnesses' criticisms of Skillman's analysis, the findings in the hearings officer's report reflected his awareness of other factors which LCC alleged were more likely causes of the landslide on the Dibble property. For example, the hearing officer noted Skillman's testimony about observing seeps near the gas well road above the Dibble property and accepted Skillman's explanation for why the gas well road was not the cause of the landslide.

The hearing officer also noted Skillman's testimony about the seven coal seams located near the Dibble property, including Skillman's observation that only the Williamson and Pond Creek coal seams had documented coal mining. The officer also noted the testimony of Skillman and other witnesses (including

Branham and Baker) about adits near the Dibble property. He also discussed Skillman's opinion that the adits were not the cause of the landslide because they were outside the watershed and Baker's testimony that the adits were at a lower elevation than his report indicated. The hearing officer also found that LCC's underground mine was the only known coal mine located above the Dibble landslide. He also specifically found the Pond Creek seam was located below the Dibble landslide.

The hearing officer also discussed Baker's testimony about the water discharging from the Williamson coal seam demonstrating elevated levels of certain minerals (iron, manganese, and aluminum) which were not present in the water samples taken by Skillman. But the hearing officer found more persuasive Skillman's opinion that sulfates were a better indicator of mine-influenced water than iron, manganese, and aluminum—because sulfate would not "precipitate out" whereas iron, manganese, and aluminum levels might vary depending on conditions. (Page 17 of hearing officer report.) The hearing officer also noted the testimony of several witnesses (including Branham and Baker) that a water well of unknown depth was located above the Dibble landslide—however, he found there was no evidence showing this was the source of the mine-influenced water.

The hearing officer noted the Cabinet had the burden of going forward to establish a *prima facie* case of non-compliance while LCC had the burden of

persuasion to show the Secretary should vacate the non-compliance notice. (LCC has not challenged the hearing officer's statements about which party had the burden of proof.) The hearing officer found the Cabinet made a *prima facie* case that LCC violated regulations due to evidence of uncontrolled seeps of mine-influenced water, of which the only possible source was LCC's underground mine. He also determined LCC did not present evidence sufficient to overcome Skillman's conclusions that sulfate levels in water samples showed the cause of the landslide was mine-influenced water and that the source of the mine-influenced water was LCC's underground mine.

The hearing officer noted evidence of a culvert and drainpipes next to or under the gas well road which are channeling mine-influenced water and contributing to soil saturation in the Dibble landslide. But he held this evidence not to be grounds to vacate the non-compliance notice and remediation order. The hearing officer stated LCC had the regulatory obligation to control water seeping out of its underground mineworks, which evidence showed it failed to do.

Despite LCC's arguments to the contrary, the Cabinet made sufficient factual findings which are supported by substantial evidence based on our review of the record. Again, the fact that LCC's witnesses testified to different opinions than those expressed by Skillman does not mean that the Cabinet could not rely on

Skillman's opinions or that the Cabinet's findings are not supported by substantial evidence.  *See, e.g.*, *500 Associates*, 204 S.W.3d at 131-32.

Moreover, the circuit court properly declined to substitute its own judgment or to make factual findings of its own.  Instead, it properly determined that the Cabinet's findings are supported by substantial evidence and thus cannot be disturbed.  *See, e.g.*, *id*.  In short, the circuit court applied the proper law in granting summary judgment affirming the Cabinet's decision.

Further arguments in the parties' briefs have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM.**

ALL CONCUR.

| | |
|---|---|
| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE COMMONWEALTH OF KENTUCKY, ENERGY AND ENVIRONMENT CABINET: |
| Billy R. Shelton Lexington, Kentucky | |
| | Lance C. Huffman John Z. Garvey Frankfort, Kentucky |